768 P.2d 196
**STATE of Arizona, Appellee,**

v.

**Phyllis Diane EMANUEL, Appellant.**

**No. 1 CA–CR 12338.**

Court of Appeals of Arizona,
Division 1, Department B.

Jan. 19, 1989.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellee.

Roberson & Shelley by Jerrold F. Shelley, Yuma, for appellant.

## OPINION

EUBANK, Judge.

■ Where a trial judge personally investigates a defendant's background, *ex parte*, prior to sentencing, must he recuse himself from sentencing? We hold that he must.

This is an appeal by appellant from the judgment of conviction and her presumptive sentence to a term of imprisonment for five years imposed for one count of theft, a class 3 felony, in violation of A.R.S. §§ 13–1801, 13–1802.

Appellant was charged by indictment with eight felony counts. Pursuant to a plea agreement, she pled guilty to count two, theft, a class 3 felony. The victim of the theft was the clerk of the Yuma County Superior Court. The plea agreement established a $4,500 ceiling for restitution, but there was no agreement concerning the sentence to be imposed, although the range of possible sentences was set forth. In exchange for her guilty plea, the state agreed to dismiss the remaining seven counts of the indictment.

At the change of plea hearing, the trial court clearly explained the possibility of a prison sentence to appellant. The trial judge then explained that although probation was available, the crime carried a presumptive term of five years in prison, a minimum term of three years and nine months, and a maximum term of ten years. The trial court heard the factual basis for the plea and deferred its acceptance of the plea until sentencing.

On December 22, 1987, the parties appeared before the court for a presentence hearing. At that time, appellant's counsel made statements concerning the presence of mitigating factors and urged the court to follow the probation officer's recommendation for probation. The appellant was a former legal secretary in the Yuma area. Appellant was asked if she had anything to add to her attorney's comments and she responded negatively. The court then indicated sentencing would take place the following day and stated to appellant, "I would like for you to expect that when you

come to court that you will have to spend some time either in prison or jail. Make arrangements accordingly."

The following day at sentencing, the trial court indicated that, after consideration of the circumstances, a prison term was the appropriate sentence to be imposed. The trial court noted in part that appellant had a very sporadic employment history, a need for a structured environment not available through probation, a lack of stable residence and other aggravating circumstances articulated in the presentence report. Immediately prior to the imposition of sentence, appellant interrupted the trial judge and requested to be heard. The trial court allowed appellant to speak, whereupon she made a plea for probation. After she finished, the following colloquy occurred:

THE COURT: All right. Anything further?

THE DEFENDANT: Well, I would like to move that you disqualify yourself as a judge because I feel that you have personal disgust and animosity and hatred and maybe dislike for me and that you are on a personal basis with the victim which I believe could cause bias.

Also because you readily solicited unsworn testimony on the basis of some old rumor without disclosing it as evidence. I feel you gave weight to it in your deliberations. I think if any of those grounds are true, Your Honor, that you should disqualify yourself.

THE COURT: All right. To address your motion that I disqualify myself, which of course is untimely among other things, it's true that because the probation or the presentence report does not reveal anything about why you left the employment of some of these lawyers, that I did talk to two lawyers and I did talk to the clerk. What they told—or that is what the lawyers told me was, what I would say, is in your favor. They, for one thing, do not believe that you have been stealing all your life. They pretty much confirmed what you have said today. They think that this theft offense is isolated. However, the two lawyers that I talked to did relate instances where you had taken money

from them even though they both requested leniency for you.

I'm not basing my sentence on what they told me. It's solely upon the presentence report. That's why I felt it necessary to explain further why prison was required rather than probation.

In regard to talking to the clerk who is an officer of the court and who is in the same floor of the courthouse, what I asked her about was why you left her employment. She said that you became angry over her questioning your work and that you left, but that she was somewhat happy to see you leave and that you probably would not have stayed beyond your probationary period anyway. I think that what she told me and what I learned from the lawyers is somewhat common knowledge in the legal community. But again none of it appears in the presentence report and none of it is being considered by the court in determining the penalty.

Your motion for me to disqualify myself is denied.

After further discussion, the trial court proceeded and sentenced appellant to the presumptive term of five years.

■ Appellant contends that the trial judge committed reversible error in conducting an *ex parte* inquiry into her background prior to sentencing and then refusing to recuse himself. This contention is based squarely on two Arizona Supreme Court cases: *State v. Leslie,* 136 Ariz. 463, 666 P.2d 1072 (1983), and *State v. Valencia,* 124 Ariz. 139, 602 P.2d 807 (1979). In *Leslie,* a first degree murder case, the trial judge had telephone contact with two of the victim's relatives before he conducted the presentence hearing, required by A.R.S. § 13–703(B). At the hearing, it was agreed that the judge's contact with the relatives violated *State v. Valencia,* and the judge disqualified himself. Regarding the disqualification, the Supreme Court approved the judge's action and said:

In this case, circumstances placed the trial court in a situation where the law closely confined its discretion. In the first place, Judge Dann's contact with

the victim's relatives mandated his disqualification from the case. *State v. Valencia, supra.* The judge realized this, spread the matter on the record and recused himself.

136 Ariz. at 464, 666 P.2d at 1073.

In *Valencia,* the brother of the victim talked to the trial judge in his chambers on the afternoon prior to the scheduled resentencing. On behalf of the victim's family, he requested that the defendant be sentenced to death. The defendant argued on appeal that the trial judge should have disqualified himself from resentencing the defendant, and our Supreme Court agreed. The court said:

The ABA Code of Judicial Conduct, Canon 3(A)(4) indicates that a judge should "... neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." Moreover, Canon 2 mandates that a judge should avoid even the appearance of impropriety in all of his activities. [Citations omitted].... Such a rule is a requisite to the orderly administration of justice in any judicial system.

124 Ariz. at 140, 602 P.2d at 808. *See* Rule 81, Canons 2 and 3(A)(4), 17A A.R.S., Arizona Rules of the Supreme Court.

The appellee attempts to distinguish *Leslie* and *Valencia* from the instant appeal on the basis that both opinions involved death penalty sentences while the conviction *sub judice* is not a death penalty case. No authority is cited in support of the contention. However, our own search reveals that there is no basis for this contention. *See State v. Brown,* 124 Ariz. 97, 602 P.2d 478 (1979), a case involving a charge of fraudulently obtaining money by a scheme or artifice, a violation of A.R.S. § 13–320.01, now § 13–2310. In *Brown* the trial judge became aware of inconsistencies between the defendant's in-court testimony and the written information that she had given on the pretrial release questionnaire. The judge gave the file to the prosecutor at the lunch break to review. When the judge "became aware—that nothing was going to happen" he called the prosecutor's supervisor into his chambers and showed him the conflict. He then *directed* the supervisor to investigate perjury charges against the defendant. The supervisor then talked to the prosecutor and prepared him for cross-examination of the defendant. Defense counsel was neither present nor informed of these actions. As trial resumed, the prosecutor proceeded to impeach the defendant. Defense counsel objected and the trial judge overruled the objection. After further discussion, the above stated facts came out and defense counsel moved for a change of judge. This request was heard before another judge who denied the requested change, and defendant's conviction followed. Justice Cameron, speaking for the Supreme Court in remanding for a new trial, said:

Rule 10.1, Arizona Rules of Criminal Procedure, 17 A.R.S., in effect at trial, provided:

"Change of judge for cause

"a. Grounds. In any criminal case the state or any defendant shall be entitled to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge."

We have stated that the right to a fair trial is the "foundation stone upon which our present judicial system rests," and that there is an indispensable right to trial presided over by a judge who is "impartial and free of bias or prejudice." *State v. Neil,* 102 Ariz. 110, 112, 425 P.2d 842, 844 (1967). It is the intent of our rules and statutes in the administration of justice that cases be tried by judges who are not biased or prejudiced. *State v. Puckett,* 92 Ariz. 407, 377 P.2d 779 (1963). See ABA Standards Relating to the Function of the Trial Judge, Part 1.7 (Approved Draft, 1972). Canon 3(c) of the ABA Code of Judicial Conduct (as amended August 1977) states:

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal

knowledge of disputed evidentiary facts concerning the proceeding;"

We have no quarrel with a judge notifying the prosecutor when he has reasonable grounds to believe that perjury has been committed. The American Bar Association's Standards of Criminal Justice do not require a judge to sit idly by and allow perjury to be committed without bringing it to the attention of the proper authorities. ABA Standards, supra, Part 1.1. We believe, however, that Judge McDonald acted in such a way that his "impartiality might reasonably be questioned." Canon 3(c), supra.

\* \* \* \* \* \*

In *In re Guardianship of Styer*, 24 Ariz.App. 148, 151, 536 P.2d 717, 720 (1975), our Court of Appeals defined judicial bias as "a hostile feeling or spirit of ill-will," or "undue friendship or favoritism towards one of the litigants." Judge McDonald's actions gave an appearance of "a hostile feeling or spirit of ill-will" towards the defendant. A judge should avoid even the appearance of partiality. *Taylor v. Haves*, 418 U.S. 488, 94 S.Ct. 2697. 41 L.Ed.2d 897 (1974); ABA Standards, supra, § 1.7.

124 Ariz. at 99–100, 602 P.2d at 480–481.

Thus, it is clear that appellee's contention that *Leslie* and *Valencia* apply only to death sentence cases is without substance. *Cf. State v. Thompson*, 150 Ariz. 554, 724 P.2d 1223 (App.1986).

Indeed, the Supreme Court has indicated rather strongly that the same rule announced in *Valencia* would also apply in civil cases. *McElhanon v. Hing*, 151 Ariz. 403, 728 P.2d 273 (1986) cited *Valencia* for the rule on disqualification. Although the *McElhanon* case held that the judge was not required to disqualify himself, the court said:

Appearances might have been different if the events that transpired at the ex parte conference had been hidden from defendants.... Thus, unlike *State v. Valencia*, the ex parte communication did not provide the judge with new and unrebutted factual information on the very issues that he was to decide....

\* \* \* \* \* \*

[J]ustice must not only be done fairly but must be perceived as having been fairly done.... Anything else tends to undermine public confidence in the judicial system....

\* \* \* \* \* \*

We would not affirm the verdict if a significant appearance of judicial impropriety existed.

151 Ariz. at 412, 728 P.2d at 282.

■ Appellee also makes a waiver argument. It notes that appellant neither filed a written motion for change of judge, pursuant to Rule 10.1(B), Arizona Rules of Criminal Procedure, nor requested that the trial judge disqualify himself prior to commencement of the sentencing proceeding.

Appellee cites a number of cases in support of its Rule 10.1, Arizona Rules of Criminal Procedure, waiver argument. These are: *State v. Poland*, 144 Ariz. 388, 698 P.2d 183 (1985); *State v. Perkins*, 141 Ariz. 278, 686 P.2d 1248 (1984); *State v. Mincey*, 141 Ariz. 425, 687 P.2d 1180 (1984); *State v. Cruz*, 137 Ariz. 541, 672 P.2d 470 (1983); *State v. Schutte*, 117 Ariz. 482, 573 P.2d 882 (App.1977); *State v. Munoz*, 110 Ariz. 419, 520 P.2d 291 (1974). None of these cases involves an *ex parte* investigation by the judge, such as we have here; thus the cases are distinguishable on that basis from this appeal. Only *Mincey* comes close. There, however, the Supreme Court distinguished it from *Valencia*. For the reasons *Valencia* did not apply in *Mincey*, it does not apply here. The cases are also distinguishable because they do not address Judicial Canon 3(C) violations by a trial judge. While appellee's Rule 10.1 argument is factually correct, we are of the opinion that "waiver" is not a viable claim or defense where a violation of Judicial Canon 3(C) is raised prior to actual sentencing. Indeed, the same argument was made and rejected by our Supreme Court in *State v. Valencia*, 124 Ariz. at 141, 602 P.2d at 809, and implied in *State v. Brown*. *See also ABA Standards relating to Trial Courts*, § 2.32 (1976); *III ABA Standards*

*for Criminal Justice,* Judicial Restraint, § 18–6.9 (1980), *infra.*

The extra-judicial facts acquired by the trial judge in this instant appeal must also be distinguished from the facts that a trial judge regularly acquires from judicial sources. In *State v. Thompson,* 150 Ariz. 554, 557, 724 P.2d 1223, 1227 (1986), we drew this distinction, stating:

We concur with the reasoning of *Jones [v. State,* 416 N.E.2d 880 (Ind.App.1981)] and *Manning [v. Engelkes,* 281 N.W.2d 7 (Iowa 1979)]. Although involving different facts, this court stated the same general rule in *Smith v. Smith,* 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App.1977), "It is generally conceded that the bias and prejudice necessary to disqualify a judge must arise from an extra-judicial source and not from what the judge has done in his participation in the case." We agree that the rule that a trial judge must be impartial, "does not mean that a judge must recuse himself from a criminal case merely because he has heard unfavorable remarks about the defendant in the course of prior litigation." *Commonwealth v. Campbell,* 5 Mass. App.Ct. 571, 587, 366 N.E.2d 44, 57 (1977) (alleged bias based on judge presiding over earlier trial of same defendant). *See also State v. Munoz,* 110 Ariz. 419, 520 P.2d 291 (1974).

The cases of *State v. Valencia,* 124 Ariz. 139, 602 P.2d 807 (1979) and *State v. Leslie,* 136 Ariz. 463, 666 P.2d 1072 (1983), cited by defendant, are readily distinguishable. Both were cases in which the trial court spoke *ex parte* to relatives of murder victims prior to sentencing. The information received there was not obtained in a prior judicial proceeding.

Finally, our holding requiring the trial judge to recuse himself under the facts here and pursuant to Rule 81, Judicial Canon 3(C), is supported by III *ABA Standards for Criminal Justice,* Standard 18–6.9, Judicial Restraint (2d Ed.1980), which states:

Although the sentencing court may appropriately take into consideration the defendant's admission of guilt or assistance given the prosecution in some circumstances, it is inappropriate for the court to take the initiative in seeking to obtain such a confession or to induce cooperation with the prosecution. Similarly, although it is desirable that the sentencing court request the parties and the probation officer to provide it with additional information where the sentencing record appears incomplete or potentially inaccurate, the court should not undertake its own investigation absent extraordinary circumstances or otherwise consider allegations of misconduct by the defendant not present in the sentencing record.

*Id.* at 495.

The sentence herein is vacated, and this matter is remanded to the superior court for resentencing before a different judge.

FIDEL, P.J., and JACOBSON, J., concur.